Dear Rep. Thompson and Mr. Teague:
You have each requested an Attorney General's opinion regarding the procurement of health care coverage by the Office of Group Benefits. Because these two requests relate to the same issue, we will address your requests in one opinion. Pursuant to the provisions of R.S. 42:801
et. seq., the Office of Group Benefits (OGB), within the Division of Administration, is required to procure health care coverage on behalf of state employees and retirees. Your questions address the procedures by which OGB procures such coverage.
On August 28, 2006, OGB issued a Notice of Intent to Contract (NIC) for Administrative Services Only (ASO) to firms which had expressed interest in administering its EPO, MCO and HMO benefit plans. Under an ASO agreement, OGB is not purchasing insurance. Rather, it is self-funding or assuming the risk of the medical expenses of its members and requesting that an ASO administrator simply provide its medical provider networks to members and pay claims.
One particular company, Vantage Health Plan, Inc. ("Vantage"), a licensed HMO, declined to bid on this NIC stating that it could only provide services on a fully insured basis. Neither did this company timely protest this solicitation pursuant to Louisiana Administrative Code Title 34, Section 145(8). (This section requires actions protesting the contents of a solicitation to be filed at least 14 days prior to the date proposals are due.) It is the position of Vantage that OGB has the authority to award a contract to them on a fully insured basis pursuant to R.S. 42:802, notwithstanding the fact that OGB is in the midst of a competitive negotiation process. It is the position of the OGB *Page 2 
that it is immaterial whether independent authority exists for it to award contracts without the necessity of a competitive negotiation process. In this instance, OGB chose to utilize a competitive bid process. Having chosen to embark on this avenue of solicitation, OGB asserts it is now incumbent upon them to adhere to this process.
OGB has asked whether, once OGB issued an NIC, they must comply with the provisions of the NIC in awarding contracts, regardless of any otherwise applicable statutory authority. Rep. Thompson has asked whether OGB has the authority to contract directly with Vantage, notwithstanding the fact that OGB is in the midst of a competitive negotiation process. Specifically, Rep. Thompson has asked whether or not OGB may enter into contracts with providers that have not followed the competitive bid process requirements of the Procurement Code.
OGB determined that it would be in the best interests of OGB and the State of Louisiana to self-fund or self-insure health care coverage on behalf of state employees and retirees. As indicated, on August 28, 2006, OGB issued a Notice of Intent to Contract (NIC) for Administrative Services Only (ASO) to firms which had expressed interest in administering its EPO, MCO and HMO benefit plans. The NIC set forth a competitive bid process by which contracts would be awarded. By electing to issue the NIC to procure such contracts, OGB is bound by the terms of the NIC. See Attorney General Opinion Nos. 06-0051 and 81-582. It is the opinion of our office that any contract that falls within the scope of the NIC must be awarded according to the terms of the NIC. Both OGB and Vantage assert that a fully-insured plan administered by Vantage would not fall within the scope of the NIC, as the NIC is for Administrative Services Only. If this assertion is correct, the NIC issued by OGB will not limit their legal authority to contract with Vantage.
We will now set forth OGB's authority to contract and the procedures which OGB must follow in awarding contracts. We start with La.R.S.42:802B, which sets forth the powers and duties of OGB. R.S. 42:802B(8) provides as follows:
 (8)(a) To negotiate contracts under the provisions of Chapter 16 of Subtitle III of Title 39 of the Louisiana Revised Statutes of 1950, in the best interests of the office and its covered persons. The Office of Group Benefits is specifically authorized to negotiate and contract directly with the following:
 (i) Health maintenance organizations as defined by R.S. 22:2002(7).
 (ii) A group purchaser as defined in R.S. 40:2202(3).
 (iii) A preferred provider organization. *Page 3 
 (iv) A health care provider or providers for formation of a preferred provider organization as defined by R.S. 40:2202(5).
 (b) The office is specifically authorized to negotiate and contract directly for the following:
 (i) Provision of basic health care services and other health care services to the program's covered persons.
 (ii) Any other health care plan or systems, including but not limited to any health care service, delivery system, benefits programs, insurance, or any other plan or programs that may be authorized by law.
 (c) For the purposes of this Paragraph, the basic health care services provided under a contract for a preferred provider organization or a health maintenance organization shall be those services which are covered under the Office of Group Benefits Schedule of Benefits. Nothing herein shall prohibit the office from adopting rules or regulations to prevent or prohibit adverse selection between programs offered by the office.
 (d) Any such contract shall be subject to review and final approval by the appropriate standing committees of the legislature having jurisdiction over review of agency rules by the Office of Group Benefits as designated by R.S. 49:968(B)(21)(c), or the subcommittees on oversight of such standing committees, and the office of contractual review of the division of administration.
As can be seen from the above, OGB has been given the specific authority to negotiate and contract directly with HMOs and certain other entities. It is our opinion that this authority allows OGB to contract with these entities without the necessity of following the competitive bid process set forth in Title 39.[1] However, OGB is required to develop criteria for contracting with health care providers or with preferred provider organizations or other managed care arrangements[2], and must promulgate rules and regulations which set out the process by which notice of intent to contract will be given. La.R.S. 40:2204D provides:
 D. (1) The state, or any agency of the state authorized by law to contract with or develop preferred provider organizations or other managed health *Page 4 
care arrangements, including the Office of Group Benefits, when interested in developing or participating in a preferred provider organization or other managed care arrangement, shall develop criteria governing the state's or the agency's contracting with health care providers or with preferred provider organizations or other managed care arrangements. All such criteria shall be approved by the appropriate standing committees of the legislature having jurisdiction over review of that agency's rules, or the subcommittees on oversight of such standing committees, and the office of contractual review of the division of administration.
 (2) Each agency authorized by law to develop or contract with preferred provider organizations or other managed care arrangements shall promulgate rules and regulations to establish a process through which notice of intent to contract with health care providers, preferred provider organizations, or other managed care arrangements is given. The rules and regulations shall contain provisions requiring written or published notice of the agency's intent to seek contracts for the requested services and the availability, upon request, of a detailed explanation of the services sought and of the criteria that are to be used in developing contracts. There shall be a written public announcement of the contractor or contractors awarded the contract. Upon request, any entity submitting a proposal which is not accepted shall be furnished a written explanation for the agency's action. Any contract executed in violation of rules and regulations promulgated under this Subsection shall be void.
Neither the statute nor the rules promulgated by OGB require that contracts be awarded based upon a competitive bid process. OGB's rules provide in relevant part as follows[3]:
I. Notice of Intent to Contract
 Notice of intent to contract with health care providers, or with groups or organizations of health care providers, on behalf of the State Employees Group Benefits Program for participation in a preferred provider organization, exclusive provider organization, or other managed care arrangement shall be given by publication in the official journal of the State of Louisiana or by direct solicitation setting forth the Program's intent to contract, describing the services sought, and providing a contact point for requesting a detailed explanation of the services sought and the criteria to be used in developing contracts. *Page 5 
The rules and statutes provide that OGB shall procure certain health care coverage contracts using a Notice of Intent to Contract ("NIC"). An NIC issued by OGB may provide for a competitive bid process or as an alternative provide for direct solicitation. Once OGB issues a particular NIC, OGB is bound by the terms of that NIC when awarding such health care coverage contracts.
Trusting this adequately responds to your request, we remain
Yours very truly,
CHARLES C. FOTI, JR.
ATTORNEY GENERAL
BY:
KENNETH L. ROCHE, III
Assistant Attorney General
[1] Note that R.S. 42:802B(8)(d) requires that contracts shall be subject to review and final approval by the office of contractual review of the division of administration.
[2] An HMO is a type of managed care arrangement.
[3] A copy of the OGB rules promulgated in accordance with R.S.40:2204D is attached hereto.